FILED by ____ D.C.
SEP 22 2016
STEVEN M. LARIMORE
CLERK U.S. DIST. CT
S. D. of FLA. – MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-20716 CR-MARTINEZ/GOODMAN

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(2)(A)
18 U.S.C. § 2
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

ZUGEILYS CASTILLO and
ANNIA MARRERO,

Defendants.
_______________________________/

# INDICTMENT

The Grand Jury charges that:

## The Medicare Program

1. The Medicare Program (Medicare) was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services, through its agency, the Centers for Medicare and Medicaid Services (CMS), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2. Medicare programs covering different types of benefits were separated into different program "parts." Part B of the Medicare Program covered, among other things, medical services provided by physicians, medical clinics, and other qualified health care providers, as well as

medications, including various inhalation medications, prescribed incident to such services. Part D of the Medicare Program subsidized the costs of prescription drugs for Medicare beneficiaries.

**The Medicare Part B Program**

3. Medicare Part B was administered in Florida by First Coast Service Options, a company that contracted with CMS to receive, adjudicate, process, and pay certain Part B claims.

4. Payments under the Medicare Program were often made directly to the physician, medical clinic, or other qualified provider of the medical goods or services, rather than to the beneficiary. This occurred when the provider accepted assignment of the right to payment from the beneficiary. In that case, the provider submitted the claim to Medicare for payment, either directly or through a billing company.

5. Physicians, medical clinics, and other health care providers that provided services to Medicare beneficiaries were able to apply for and obtain a "provider number." A health care provider who was issued a Medicare provider number was able to file bills, known as "claims," with Medicare to obtain reimbursement for services provided to beneficiaries. The claim form was required to contain certain important information, including: (a) the Medicare beneficiary's name and Health Insurance Claim Number ("HICN"); (b) a description of the health care benefit, item, or service that was provided or supplied to the beneficiary; (c) the billing codes for the benefit, item, or service; (d) the date upon which the benefit, item, or service was provided or supplied to the beneficiary; and (e) the name of the referring physician or other health care provider, as well as a unique identifying number, known either as the Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI"). The claim form could be submitted in hard copy or electronically.

6. When a claim was submitted to Medicare, the provider certified that the contents of the form were true, correct, complete, and that the form was prepared in compliance with the laws and regulations governing the Medicare program. The provider further certified that the services being billed were medically necessary and were in fact provided as billed.

7. Pursuant to federal statutes and regulations, Medicare only paid for health care benefits, items or other services that were medically necessary and ordered by a licensed doctor or other licensed, qualified health care provider.

**The Medicare Part D Program**

8. In order to receive Part D benefits, a beneficiary enrolled in a Medicare drug plan. Medicare drug plans were operated by private companies approved by Medicare. Those companies were often referred to as drug plan "sponsors." A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription.

9. A pharmacy could participate in the Part D Program by entering a retail network agreement directly with a plan or with one or more Pharmacy Benefit Managers ("PBMs"). A PBM acted on behalf of one or more Medicare drug plans. Through a plan's PBM, a pharmacy could join the plan's network. When a Part D beneficiary presented a prescription to a pharmacy, the pharmacy submitted a claim either directly to the plan or to a PBM that represented the beneficiary's Medicare drug plan. The plan or PBM determined whether the pharmacy was entitled to payment for each claim and periodically paid the pharmacy for outstanding claims. The drug plan's sponsor reimbursed the PBM for its payments to the pharmacy.

10. A pharmacy could also submit claims to a Medicare drug plan to whose network the pharmacy did not belong. Submission of such out-of-network claims was not common and often resulted in smaller payments to the pharmacy by the drug plan sponsor.

11. Medicare, through CMS, compensated the Medicare drug plan sponsors. Medicare paid the sponsors a monthly fee for each Medicare beneficiary of the sponsors" plans. Such payments were called capitation fees. The capitation fee was adjusted periodically based on various factors, including the beneficiary's medical conditions. In addition, in some cases where a sponsor's expenses for a beneficiary's prescription drugs exceeded that beneficiary's capitation fee, Medicare reimbursed the sponsor for a portion of those additional expenses.

12. Medicare and Medicare drug plan sponsors were "health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b).

**The Medicaid Program**

13. The Medicaid Program (Medicaid) was a jointly funded program between federal and state governments that provided medical assistance and health coverage for categories of individuals whose income and resources were insufficient to meet the costs of medical services.

14. The Florida Medicaid Program was authorized by Chapter 409, Florida State Statutes, and Chapter 59G, Florida Administrative Code. Medicaid was administered by CMS and the State of Florida Agency for Health Care Administration ("AHCA".)

15. In Florida, Medicaid contracted with a private company, to pay claims. This company was referred to as the Medicaid fiscal agent. The fiscal agent also performed a variety of other functions for Medicaid including enrollment of providers and management of the recipient eligibility system. In addition, it provided management of pharmacy benefits through the PBM vendor. On July 1, 2008, Electronic Data Systems (EDS) became the fiscal agent for the Medicaid program in Florida. On March 12, 2010, EDS changed its name to HP Enterprises Services, LLC.

16. Medicaid reimbursement for prescribed drug services was on a fee-for-service basis. The Florida Point of Sale (POS) System was the system that processed drug claims.

Pharmacies who did not use POS processing could submit Medicaid claims via electronic media (batch) to take advantage of speed and accuracy in processing. Pharmacies submitted electronic claims themselves or chose a billing agent that offered electronic claim submission services.

17. Medicaid also offered electronic funds transfer system to pay claims submitted by pharmacies. Any pharmacy who utilized the electronic funds transfer system was certifying with each use of the electronic funds transfer system that the claim(s) for which the pharmacy was being paid was in compliance with the provisions found on the claim form and with all federal and state laws.

18. Medicare and Medicaid were each a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

**The Defendants and Related Companies**

19. Florida Pharmacy, Inc. ("Florida Pharmacy") was a corporation organized under the laws of the State of Florida. Florida Pharmacy did business in Miami-Dade County purportedly providing prescription drugs and durable medical equipment to Medicare and Medicaid beneficiaries. Florida Pharmacy's principal address was 5366 West 12th Avenue, Hialeah, Florida.

20. D&Y Pharmacy Discount, Corp., ("D&Y") was a corporation organized under the laws of the State of Florida. D&Y did business in Miami-Dade County purportedly providing prescription drugs to Medicare beneficiaries. D&Y's principal address was 3715 West 16th Ave., #15, Hialeah, Florida.

21. **ZUGEILYS CASTILLO,** a resident of Miami-Dade County, was the owner and administrator of Florida Pharmacy and D&Y.

22. **ANNIA MARRERO,** a resident of Miami-Dade County, was an employee at Florida Pharmacy and D&Y.

**COUNT 1**
**Conspiracy to Commit Health Care Fraud and Wire Fraud**
**(18 U.S.C. § 1349)**

1. Paragraphs 1 through 22 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. Beginning on or about November 1, 2013, and continuing through on or about May 31, 2016, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ZUGEILYS CASTILLO**
**and**
**ANNIA MARRERO,**

did willfully, that is with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a. to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicaid, Medicare and various Medicare drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

b. to knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and

fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3. It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) paying kickbacks and bribes to ensure that Medicare and Medicaid beneficiaries would serve as patients at Florida Pharmacy and D&Y; (b) submitting and causing the submission of false and fraudulent claims to health care benefit programs; (c) concealing the submission of false and fraudulent claims to health care benefit programs, and the receipt and transfer of fraud proceeds; and (d) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

4. **ZUGEILYS CASTILLO** and **ANNIA MARRERO** paid cash kickbacks to Medicare and Medicaid beneficiaries to ensure that they would serve as patients at Florida Pharmacy and D&Y.

5. **ZUGEILYS CASTILLO** and **ANNIA MARRERO** and their co-conspirators submitted and caused Florida Pharmacy and D&Y to submit, via interstate wire transmissions, claims that falsely and fraudulently represented that various health care benefits, primarily

prescription drugs, were medically necessary, and had been provided by Florida Pharmacy and D&Y to Medicare and Medicaid beneficiaries.

6. As a result of such false and fraudulent claims, Medicaid, Medicare and Medicare prescription drug plan sponsors, through their PBMs, made overpayments funded by Medicaid and Medicare to Florida Pharmacy and D&Y and their corporate bank accounts.

7. **ZUGEILYS CASTILLO, ANNIA MARRERO,** and their co-conspirators used the proceeds from the false and fraudulent Medicaid and Medicare claims for their own use and benefit, the use and benefit of others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 2-8**
**Health Care Fraud**
**(18 U.S.C. § 1347)**

1. Paragraphs 1 through 22 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. Beginning on or about November 1, 2013, and continuing through on or about May 31, 2016, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ZUGEILYS CASTILLO**
**and**
**ANNIA MARRERO,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicaid, Medicare and various Medicare drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and

property owned by, and under the custody and control of, said health care benefit programs.

**Purpose of the Scheme and Artifice**

3. It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) paying kickbacks and bribes to ensure that Medicare and Medicaid beneficiaries would serve as patients at Florida Pharmacy and D&Y; (b) submitting and causing the submission of false and fraudulent claims to health care benefit programs; (c) concealing the submission of false and fraudulent claims to health care benefit programs, and the receipt and transfer of fraud proceeds; and (d) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

**The Scheme and Artifice**

4. The allegations contained in paragraphs 4 through 7 of the Manner and Means section of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

**Acts in Execution or Attempted Execution of the Scheme and Artifice**

5. On or about the dates set forth as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, **ZUGEILYS CASTILLO** and **ANNIA MARRERO**, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicaid, Medicare and various Medicare drug plan sponsors, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in that the defendants submitted and caused the submission

of false and fraudulent claims seeking the identified dollar amounts, and representing that Florida Pharmacy and D&Y provided pharmaceutical items and services to Medicaid and Medicare beneficiaries pursuant to physicians' orders and prescriptions:

| Count | Medicare Beneficiary | Approx. Date of Submission of Claim | Medicaid/Medicare Claim Number | Pharmacy; Item Claimed; Approx. Amount Claimed |
|---|---|---|---|---|
| 2 | J.L. | 09/01/2015 | 30746197349318445030746197349318445040 71 | D&Y Pharmacy; Exelon; $374 |
| 3 | J.S. | 11/17/2015 | 67294928028531855067294928028531855043 77 | D&Y Pharmacy; Seroquel XR; $616 |
| 4 | M.G. | 11/24/2015 | 2515329026405 | Florida Pharmacy; Seroquel XR; $273 |
| 5 | M.G. | 11/24/2015 | 2515329026409 | Florida Pharmacy; Duloxetine HCL; $235 |
| 6 | M.G. | 01/05/2016 | 2516006016651 | Florida Pharmacy; Seroquel XR; $273 |
| 7 | J.S. | 01/18/2016 | 16018447345983899877 34 | Florida Pharmacy; Seroquel XR; $652 |
| 8 | J.L. | 06/01/2016 | 16153370316007599988 75 | Florida Pharmacy; Seroquel XR; $251 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 9
## Conspiracy to Defraud the United States and Pay Health Care Kickbacks (18 U.S.C. § 371)

1. Paragraphs 1 through 22 of the General Allegations section of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2. Beginning in or around November 1, 2013, and continuing through in or around

May 31, 2016, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ZUGEILYS CASTILLO**
**and**
**ANNIA MARRERO,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with others, known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a. to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare and Medicaid program in violation of Title 18, United States Code, Section 371; and to commit certain offenses against the United States, that is:

b. to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by a Federal health care program, that is, Medicare and Medicaid;

**PURPOSE OF THE CONSPIRACY**

3. It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by: (1) paying kickbacks and bribes to Medicare and Medicaid beneficiaries so that their Medicare and Medicaid beneficiary numbers would serve as the bases of claims filed by Florida Pharmacy and D&Y Pharmacy for pharmaceutical drugs; and (2)

submitting and causing the submission of claims to Medicare and Medicaid for pharmaceutical drugs that defendants and their co-conspirators purportedly provided to those beneficiaries.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4. **ZUGEILYS CASTILLO** and **ANNIA MARRERO** paid cash kickbacks to Medicare and Medicaid beneficiaries to ensure that they would serve as patients at Florida Pharmacy and D&Y.

5. **ZUGEILYS CASTILLO** and **ANNIA MARRERO** and their co-conspirators submitted and caused Florida Pharmacy and D&Y to submit, claims to Medicare, Medicaid, and Medicare drug plan sponsors for prescription drugs.

6. Medicare, Medicaid, and Medicare drug plan sponsors paid Florida Pharmacy and D&Y based upon the claims submitted for prescription drugs purportedly provided to Medicare and Medicaid beneficiaries.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the co-conspirators committed and caused to be committed in the Southern District of Florida at least one of the following overt acts, among others:

1. In or around October 2015, **ZUGEILYS CASTILLO** arranged to pay a cash kickback to beneficiary E.D. in exchange for submitting claims to Medicare for nine prescription drugs.

2. On or about November 24, 2015, **ZUGEILYS CASTILLO** paid a cash kickback in the approximate amount of $100 to Maria Serrano in exchange for referring a Medicaid beneficiary to Florida Pharmacy for prescription drugs.

3. On or about January 6, 2016, **ANNIA MARRERO** paid a cash kickback in the approximate amount of $140 to Maria Serano in exchange for referring a Medicaid beneficiary to Florida Pharmacy for prescription drugs.

4. In or around October 2015, **ZUGEILYS CASTILLO** arranged to pay a cash kickback to beneficiary E.D. in exchange for submitting claims to Medicare for nine prescription drugs.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 10-12
**Payment of Kickbacks in Connection with a Federal Health Care Benefit Program**
**(42 U.S.C. § 1320a-7b(b)(2)(A))**

1. Paragraphs 1 through 22 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates enumerated below as to each count, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**ZUGEILYS CASTILLO**
**and**
**ANNIA MARRERO,**

did knowingly and willfully solicit and receive any remuneration, including any kickback and bribe, directly and indirectly, overtly and covertly, in cash and in kind, as set forth below, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare and Medicaid:

| Count | Approximate Date | Approximate Kickback Amount |
|---|---|---|
| 10 | November 24, 2015 | $100 |
| 11 | January 6, 2016 | $140 |
| 12 | April 12, 2016 | $60 |

In violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A) and Title 18, United States Code, Section 2.

**FORFEITURE**
**(18 U.S.C. § 982)**

1. The allegations contained in this Indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which **ZUGEILYS CASTILLO** and **ANNIA MARRERO** have an interest.

2. Upon conviction of any counts alleged in this Indictment, the defendants, **ZUGEILYS CASTILLO** and **ANNIA MARRERO** shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

All pursuant to Title 18, United States Code, Sections 982(a)(7) and the procedures outlined in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

WIFREDO A. FERRER
UNITED STATES ATTORNEY

HAGERENESH SIMMONS
SPECIAL ASSISTANT U.S. ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

ZUGEILYS CASTILLO and ANNIA MARRERO,

Defendants. /

CASE NO. ____________

# CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

New Defendant(s) Yes ____ No ____
Number of New Defendants ____
Total number of counts ____

**Court Division:** (Select One)

X Miami ____ Key West
____ FTL ____ WPB ____ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No) Yes
   List language and/or dialect Spanish

4. This case will take 7 days for the parties to try.

5. Please check appropriate category and type of offense listed below:

| (Check only one) | | | (Check only one) | |
|---|---|---|---|---|
| I | 0 to 5 days | ____ | Petty | ____ |
| II | 6 to 10 days | X | Minor | ____ |
| II | 11 to 20 days | ____ | Misdem. | ____ |
| IV | 21 to 60 days | ____ | Felony | X |
| V: | 61 days and over | ____ | | |

6. Has this case been previously filed in this District Court? (Yes or No) No
If yes:
Judge: Case No. ____________
(Attach copy of dispositive order)
Has a complaint been filed in this matter? (Yes or No) No
If yes:
Magistrate Case No. ____________
Related Miscellaneous numbers: ____________
Defendant(s) in federal custody as of ____________
Defendant(s) in state custody as of ____________
Rule 20 from the ____________ District of ____________

Is this a potential death penalty case? (Yes or No) No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? ____ Yes X No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? ____ Yes X No

For ____________
Hagerenesh Simmons
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0485438

*Penalty Sheet(s) attached

REV 4/8/08

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name:** **ANNIA MARRERO**

**Case No:** ______

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

* **Max. Penalty**: Twenty (20) years' imprisonment

Counts #: 2-8

Health Care Fraud

Title 18, United States Code, Section 1347

***Max. Penalty:** Ten (10) years' imprisonment as to each count

Count #: 9

Conspiracy to Defraud the United States and Pay Health Care Kickbacks

Title 18, United States Code, Section 371

***Max. Penalty:** Five (5) years' imprisonment

Counts #: 10-12

Payment of Kickbacks in Connection with a Federal Health Care Benefit Program

Title 42, United States Code, Section 1320a-7b(b)(1)(A)

***Max. Penalty:** Five (5) years' imprisonment as to each count

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name:** **ZUGEILYS CASTILLO**

**Case No:** ______

Count #: 1

Conspiracy to Commit Health Care Fraud and Wire Fraud

Title 18, United States Code, Section 1349

* **Max. Penalty**: Twenty (20) years' imprisonment

Counts #: 2-8

Health Care Fraud

Title 18, United States Code, Section 1347

***Max. Penalty:** Ten (10) years' imprisonment as to each count

Count #: 9

Conspiracy to Defraud the United States and Pay Health Care Kickbacks

Title 18, United States Code, Section 371

***Max. Penalty:** Five (5) years' imprisonment

Counts #: 10-12

Payment of Kickbacks in Connection with a Federal Health Care Benefit Program

Title 42, United States Code, Section 1320a-7b(b)(1)(A)

***Max. Penalty:** Five (5) years' imprisonment as to each count

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**